```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


MEADOWCREST LIVING CENTER                    CIVIL ACTION
L.L.C.

VERSUS                                       NO: 06-3210

HANOVER INSURANCE COMPANY                    SECTION: "R"(5)
```

## ORDER AND REASONS

Before the Court are plaintiff's motions for partial summary judgment on the period of restoration and statutory remedies, and plaintiff's motion in limine to exclude the expert testimony of Harold Asher.  For the following reasons, the Court DENIES plaintiffs' motions for partial summary judgment and DENIES plaintiff's motion in limine.

### I.   BACKGROUND

Plaintiff, Meadowcrest Living Center, L.L.C. sued defendant, Hanover Insurance Company, on June 20, 2006.  Plaintiff manages and operates a nursing home in Jefferson Parish. (R. Doc. 1 ¶ 4.) Defendant insured the nursing home against physical damages, business interruption, and extra expense losses caused by windstorm, falling objects, and water damage. (*Id.* ¶ 5.) Plaintiff alleges that the nursing home suffered substantial damage as a result of Hurricane Katrina, which also resulted in

substantial damages due to business interruption. (*Id.* ¶ 6.) The property damage to the Facility also caused Meadowcrest business interruption and extra expense losses. Plaintiff alleges that it notified Hanover of the damages to the Facility in September of 2005. (*Id.* ¶ 8.)

Plaintiff alleges that defendant owes it $737,085.19, the sum of invoices from North American Restoration & Consulting, Inc. for "environmental clean up" of the Facility. Meadowcrest also alleges that Hanover owes it $183,237.00 in Business Interruption losses, but has only paid $300,000.00. (*Id.* ¶¶ 25-27.) Meadowcrest further alleges that it is owed $31,464.00 in "Extra Expense." (*Id.* ¶ 28.) Finally, plaintiff alleges bad faith breach of contract in violation of Louisiana Revised Statutes §§ 22:658 and 22:1220. (*Id.* ¶¶ 32-38.)

Plaintiff filed a first supplemental complaint on September 26, 2006. (R. Doc. 12.) In the amended complaint plaintiff alleges that its Business Interruption losses for March through July 2006 totaled a little more than $1.5 million, and its Extra Expenses for the same period were $25,245.00. (*Id.*)

## II. Partial Summary Judgment

### A. Legal Standard

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled

to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  The moving party bears the burden of establishing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325; *see also Lavespere*, 910 F.2d at 178.  The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See Celotex*, 477 U.S. at 324.  The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial. *See id.* at 325; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1996).

**B.   Period of Restoration**

Plaintiff moves for partial summary judgment on when the

period of restoration of its nursing home ended.  Plaintiff contends that the period of restoration ended on June 15, 2006, the day its repairs were complete and the Department of Health and Hospitals (DHH) approved the Facility to begin re-occupation. Defendant avers that the period of restoration ended three months earlier, on March 1, 2006.

The insurance policy provides that the period of restoration ends on the earlier of:

1.  The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

2.  The date when business is resumed at a new permanent location.

(*See* R. Doc. 74-3 at 8.)  Because the Meadowcrest facility was repaired, and not re-located, only the date when the property should have been "repaired, rebuilt or replaced with reasonable speed" is at issue in this motion.

The Court finds that there are genuine issues of fact precluding summary judgment on when the period of restoration ended.  Plaintiff has introduced two declarations by Steve Yancovich, the administrator of the nursing home leased and operated by Meadowcrest. (R. Docs. 74-7, 98-3.)  He attests that repairs to the nursing home were not complete in March of 2006, that DHH certified the Facility to re-open and admit residents on June 15, 2006 and that Meadowcrest re-opened and began admitting residents the next day, June 16, 2006. (R. Doc. 74-7.) (*See also*

R. Doc. 74-6, DHH certificate.)  Yancovich further attests that complications arose with regard to the fire alarm and nursing call system, and the repairs to those systems were therefore not complete until May of 2006. (R. Doc. 98-3.)  Finally, he states that Meadowcrest needed a sanitation inspection and an inspection by the State Fire Marshall before it could receive certification to re-open the nursing home. (*Id.*)

Plaintiff also introduces the deposition testimony of Tim Fitzgerald, its contractor.  Fitzgerald testified that although the repairs typically would have taken about four months, it took longer than four months because it was difficult to obtain manpower, labor, and materials after Hurricane Katrina. (Fitzgerald Dep., R. Doc. 119-2 at 38, 43, 54.)  He also testified that it took longer to repair the alarm system because Hanover's adjuster, Dave Payton, had not approved those items as of November of 2005 (*id.* at 65-67), and finally that the repairs for hurricane damage were complete sometime between late May and June of 2006. (*Id.* at 141, 152.)

Defendant's expert, James Creech, a construction consultant with Belfor USA, states that Geaux Corporation, the company Meadowcrest hired to make repairs to its facility, should have been able to complete the repairs within four months. (Creech Aff. ¶ 5.)  In his expert report, Creech further opines that "if the repairs had been started in a timely manner and the work

progressed without interruption the project should have been completed in January 2006." (*See* R. Doc. 88-4.)  Although the facility may not have been completely repaired until late May or early June of 2006, the insurance contract provides that the period of restoration ends not on the date the facility <u>is</u> repaired, but the date when the property at the described premises <u>should</u> be repaired, rebuilt or replaced with reasonable speed and similar quality.  The Court finds that Creech's report creates an issue of material fact regarding when the property should have been repaired with reasonable speed.

Defendant also disputes Yancovich's declaration that the repairs to the alarm and nursing calls systems could not be completed before May of 2006.  Defendant attaches an estimate from Geaux Corporation dated October 7, 2005 which notes that it needs to "[p]erform inspection & testing of the fire alarm system to determine extent of damage" and also provides that it needs to test the nurses' call system to determine the extent of its damage. (R. Doc. 131-12 at 16-17.)  Defendant therefore contends that Meadowcrest was aware by October of 2005 that repairs to the fire alarm system and the nursing call station likely needed to be made.  Although Fitzgerald testified that they were waiting on Hanover's approval to repair those systems, Hanover's corporate representative testified that it had an expert come in sometime in early December to discuss the nurse's call system and its

6

replacement. (Dandridge Dep., R. Doc. 131-4 at 26-28.)  The Court cannot resolve on summary judgment when the repairs to the nursing call system should have been completed.  Although plaintiff has introduced evidence that it couldn't repair the nursing call system until May of 2006 because it was awaiting Hanover's approval of the costs, defendant has introduced evidence that Meadowcrest knew it needed to be repaired in October of 2005, that Meadowcrest did not need "authorization" to repair the system, and finally, that a Hanover expert looked at the system in December to discuss its repair with plaintiff.  Based on these disputed facts, the Court cannot decide as a matter of law how long it should take to repair a nursing call system, a fact relevant to the determination of the end of the period of restoration.

Finally, although plaintiff relies on the deposition testimony of Michael Dandridge, Hanover's 30(b)(6) representative in both this case and another related case, *Chateau Living Center, L.L.C. v. Hanover Insurance Co.*, Civ. A. 06-3211, his testimony is not dispositive on the issue of the end of the period of restoration.  In the *Chateau* case, Dandridge testified that Hanover determined that the period of restoration ended when Chateau received its DHH Certificate of Occupancy.  He also testified that the end of the period of restoration is "once it's completed, you know, as quickly as possible." (Dandridge Chateau

Dep., R. Doc. 74-5 at 18.) He later testified that "the date that the period of restoration ends is when the building is repaired or has an occupancy ready to go, then the period of restoration would end right then." (*Id.* at 19.) Dandridge never testified that the way Hanover interprets its insurance policy is that the period of restoration does not end until the insured premises receives a certificate of occupancy. Rather, he specifically said that "every claim would be based on its own merits." (*Id.* at 23.) Accordingly, the Court finds that there are genuine issues of material fact regarding when the property should have been repaired, rebuilt or replaced with reasonable speed and similar quality. Plaintiff's motion for partial summary judgment on the period of restoration is therefore denied.

### C. Statutory Remedies

Meadowcrest moves for partial summary judgment on the issue of statutory remedies, averring that Hanover is liable to it under La. Revised Statutes §§ 22:658 and 22:1220. Plaintiff contends that defendant did not timely pay it for its business income ("BI") losses for September 2005 through February 2006. Meadowcrest therefore asks the Court to hold, as a matter of law, that Hanover violated the provisions of §§ 22:658 and 22:1220.

Louisiana law allows recovery for penalties when an insurer has been arbitrary or capricious in denying a claim. In order to

recover statutory penalties, plaintiff must show that (1) the insurer received a satisfactory proof of loss; (2) the insurer failed to pay the claim within the applicable statutory period; and (3) the insurer's failure to pay was arbitrary, capricious, or without probable cause. *Shadow Lake Mgmt. Co., Inc. v. Landmark American Ins. Co.*, 2007 WL 1959236, *3 (E.D. La. 2007) (citing *Boudreaux v State Farm Mut. Auto. Ins. Co.*, 896 So.2d 230, 233 (La App. 2005)).  Determining whether the refusal to pay was arbitrary or capricious is a question of fact for the jury to determine. *See, e.g., Coig v. Gregoire*, – So. 2d –, 2008 WL 144248 (La. App. 2008) ("the imposition of statutory penalties is a fact question"); *Haynes v. Shumake*, 582 So. 2d 959 (La. App. 1991) (noting that whether a refusal to pay is arbitrary, capricious, or without probable cause depends on the facts known to the insurer at the time of its action and is therefore "primarily a factual issue").

Although courts can rule on whether statutory penalties are owed on a summary judgment motion, *Baker v. Dearie*, 2006 WL 1968902 (E.D. La. 2006), the Court finds that in this case there are issues of fact precluding summary judgment. *See id.* at *2 n.7 ("that the determination of penalties is a question of fact to be presented to the fact-finder does not eliminate the issue from the province of summary judgment where there is shown to be no genuine issue of material fact as to the vexatiousness of the

parties' actions."). For example, it is uncontested that in October of 2005 Hanover paid Meadowcrest a $300,000.00 advance to be applied to Meadowcrest's business income losses. Although Hanover now contends that it did not owe Meadowcrest any additional payments under the policy, it is also uncontested that Hanover paid Meadowcrest an additional $419,221.00 for business income losses in February of 2007. Hanover contests that it owed Meadowcrest the additional $419,221.00 or that it owes Meadowcrest any additional business income loss payments because it avers that Meadowcrest made material misrepresentations that void coverage under the policy. The Louisiana Supreme Court has found that "where the insurer has legitimate doubts about coverage, the insurer has the right to litigate these questionable claims without being subjected to damages and penalties." *Calogero v. Safeway Insurance Company of Louisiana*, 753 So.2d 170, 173 (La. 2000); *see also Sibley v. Insured Lloyds*, 442 So.2d 627, 632 (La. App. 1 Cir. 1983) (holding that an insurer's failure to pay is not arbitrary, capricious or without probable cause if the insurer has acted in good faith reliance on a reasonable defense to the claims or if there is a reasonable disagreement between the insured and the insurer as to the amount of the loss). As there are issues of fact as to whether Hanover failed to pay a claim that was due, and whether that alleged failure to pay was arbitrary, capricious, or without probable

cause, the Court denies summary judgment.

As plaintiff conceded during oral argument, if a jury finds that plaintiff is entitled to penalties for defendant's failure to timely pay BI losses from September 2005 through February 2006, those penalties will be assessed pursuant to the former version of § 22:658.  Under § 22:658, an insurer is subject to a penalty, "in addition to the amount of the loss" of twenty-five percent of the amount due under the policy, or $1,000, whichever is greater, whenever it arbitrarily, capriciously, or without probable cause fails to pay within 30 days of satisfactory proof of loss. La. Rev. Stat. § 22:658.  The Louisiana Legislature amended § 22:658 on June 30, 2006 and increased the penalty from twenty-five percent to fifty percent.  This amendment took effect August 15, 2006 and is not retroactive. *Sher v. Lafayette Ins. Co.*, – So. 2d –, 2008 WL 928486, *8, 11 (La. 2008).  Plaintiffs filed their complaint in state court on June 26, 2006, prior to the Louisiana Legislature's amendment of § 22:658.  Additionally, the alleged bad faith conduct that is the subject of plaintiff's motion took place before the amendment, as Meadowcrest informed the Court that its motion is specifically about whether Hanover paid plaintiff its BI losses for September 2005 though February 2006. (Pl.'s Mot., R. Doc. 73-2 at 3.)  Accordingly, plaintiff's cause of action accrued before the amendments became effective.

Finally, the parties dispute whether, if penalties are owed,

11

they are owed on the entire claim, or only on the amount due. They further dispute what penalties are owed under section 1220. The language of the statutes is clear. Section 22:658 provides that "in the event a partial payment or tender has been made," as is the case here, the insurer is subjected to a penalty of "fifty percent of <u>the difference between the amount paid or tendered and the amount found to be due</u> ..." (emphasis added). Accordingly, penalties under § 22:658 are owed on whatever amount, if any, the jury determines is due.

Louisiana Revised Statute § 22:1220 provides that an insurer owes his insured a duty of good faith and fair dealing and must adjust claims fairly and promptly. The insurer can breach these duties of good faith and fair dealing by failing to pay the amount of any claim due to an insured within sixty days after the receipt of a satisfactory proof of loss when such failure is arbitrary, capricious, or without probable cause. Under § 22:1220, an insurer that arbitrarily and capriciously fails to pay a claim within sixty days after receiving satisfactory proof of loss is subject to "penalties in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater," in addition to any general and special damages to which the claimant is entitled. La. Rev. Stat. § 22:1220. Therefore, if a jury finds that defendant failed to pay the amount of plaintiff's claim within sixty days after it received

satisfactory proof of loss and that such failure was arbitrary, capricious, or without probable cause, then Meadowcrest will be entitled to penalties based on the damages it sustained as a result of Hanover's breach of its duties of good faith and fair dealing.

**III. Motion in Limine**

Plaintiff moves to exclude the expert testimony of defendant's expert witness, Harold Asher. Since plaintiff first filed its motion in limine to exclude the expert testimony of Harold Asher on April 17, 2007, defendant has twice provided a new expert report. Accordingly, the Court will review the motion in conjunction with the new expert report, dated June 20, 2008. (*See* R. Doc. 121-2.)

A district court has considerable discretion to admit or exclude expert testimony under Federal Rule of Evidence 702. *See General Electric Co. v. Joiner*, 522 U.S. 136, 138-39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000). Rule 702, which governs the admissibility of expert witness testimony, provides that an expert witness "qualified ... by knowledge, skill, experience, training or education," may testify when specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. FED. R. EVID. 702; *see also Daubert v. Merrell Dow Pharmaceuticals,*

*Inc*., 509 U.S. 579, 587, 113 S. Ct. 2786, 2794 (1993).  In *Daubert*, the Supreme Court held that Rule 702 requires a district court to act as a "gatekeeper" to ensure that "any and all scientific evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. *See also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (clarifying that *Daubert* gatekeeping function applies to all forms of expert testimony).

Plaintiff first challenges the qualifications of Asher, not the reliability or relevance of his testimony.  In assessing an expert's qualifications, the Court notes that its gatekeeping function does not replace the traditional adversary system and the role of the jury within the system. *See Daubert*, 509 U.S. at 596, 113 S. Ct. at 2798.  As the Supreme Court noted in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id*. (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).  The Fifth Circuit has added that, in determining the admissibility of expert testimony, a district court must defer to "the jury's role as the proper arbiter of disputes between conflicting opinions.  As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *United States v. 14.38*

14

*Acres of Land, More or Less Situated in Lefore County, Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).  Thus, a witness qualified as an expert is not strictly confined to his area of practice, but may testify concerning related applications; "a lack of specialization does not affect the admissibility of the opinion, but only its weight." *Wright v. John Deere Co.*, 935 F.2d 1090, 1100 (10th Cir. 1991) (collecting cases); *see also Lavespere v. Niagra Mach. & Tool Works, Inc.*, 910 F.2d 167, 176-77 (5th Cir. 1990), abrogated on other grounds by *Little v. Liquid Air. Corp.*, 37 F.3d 1069 (5th Cir. 1996) (permitting mechanical engineer who had never designed a press brake to testify as to safety of brake design).

Although plaintiff no longer contends that Asher's expert report is in violation of the Federal Rules, it continues to stress that Asher is not qualified to testify as an expert in economics, because he has a background in accounting.  The Court finds that Asher's accounting background does not prevent him from testifying regarding unfavorable business conditions faced by Meadowcrest's nursing home following Hurricane Katrina. "[T]he heart of *Daubert* is relevance and reliability.  As long as some reasonable indication of qualifications is adduced, the court may admit the evidence without abdicating its gatekeeping function.  After that, qualifications become an issue for the

trier of fact, rather than for the court in its gate-keeping capacity." *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999) (citing *Daubert*, 509 U.S. at 596).  Asher proffers an opinion on whether unfavorable business conditions related to Hurricane Katrina caused the Extended Business Income loss claimed by Meadowcrest from March through September of 2006. The Court finds that Asher's education and experience qualify him to render this opinion.  Asher possesses a masters of business administration from Tulane University, with a concentration in accounting and finance.  In addition, he has twenty-five years of accounting practice.  Asher has been qualified as an expert in at least eight different trials, in addition to testifying in arbitration proceedings, bankruptcy court, and depositions in other disputes.  Finally, he has served as a board member and budget committee member for Willow Wood Nursing Home, which positions required him to study the economic factors impacting nursing home operations. (*See* Asher Aff. ¶ 5.)  That he does not have a degree in economics does not compel the conclusion that he is not qualified to testify regarding unfavorable business conditions. *See Rushing*, 185 F.3d at 507 ("The 'emphasis on qualifications over reliability of the expert testimony reflect[s] a pre-*Daubert* sensibility.'").  The Court finds Asher sufficiently qualified to render an opinion on plaintiff's economic losses.

Plaintiff also contends that Asher's report is inadmissible because Asher has cut and pasted information from a report he co-authored with Professor James Richardson in a case concerning a different nursing home, Chateau Living Center. The Court does not find that this precludes Asher from testifying on the subject of unfavorable business conditions faced by Meadowcrest after Hurricane Katrina. Asher acknowledges that in the process of preparing his current expert report he examined and relied upon information referenced in expert reports he co-authored with Professor Richardson in cases involving two different nursing homes. Most of the data is relevant, however, as it pertains to the general economic and business conditions faced by nursing homes in New Orleans after Hurricane Katrina. To the extent that plaintiff contends that some of the information that Asher relies upon or references in the report is irrelevant because it pertains exclusively to other nursing homes, plaintiff can raise those points through cross-examination.

Finally, the Court finds that Asher has provided sufficient methodology for arriving at his conclusions. In his second revised report, Asher details what data and information he considered in coming to his conclusions about the general business and economic conditions nursing homes in Louisiana and New Orleans faced following Hurricane Katrina and how that affected Meadowcrest's business income. This information

includes data on population decline, shortages of qualified personnel, increased prices of goods and services, and increased risks of maintaining a high Medicaid patient occupancy. Accordingly, the Court finds that Asher is qualified to testify in this matter, and has provided an expert report that sufficiently details the methodology he used in reaching his conclusions.

**IV.  CONCLUSION**

For the foregoing reasons, plaintiff's motions for partial summary judgment and plaintiff's motion in limine to exclude the expert testimony of Harold Asher are DENIED.

New Orleans, Louisiana, this __30th__ day of July, 2008.

_____Sarah Vance_____
SARAH S. VANCE
UNITED STATES DISTRICT COURT